Coffin *et al.* *v.* The State.

Filed April 17, 1896.

No. 16,879.

Coffin et al. *v.* The State.

DAMAGES.—*Breach of Contract.*—*Sale of State Bonds.*—*Resale.*—Damages for the breach of a contract for the sale of bonds do not include the profit lost by inability, by reason of the breach, to fulfill a contract for the resale of the bonds at an advance, in the absence of any notice to or knowledge by the party in default of the contemplated resale, but the measure of damages is the increase in the market value of the bonds at the time of such breach.

APPELLATE PROCEDURE.—*Nominal Damages.*—*Failure to Assess.*—*Reversal.*—The failure to assess nominal damages for breach of a contract, is not an error that affects the substantial rights of appellants, entitling them to a reversal.

From the Marion Superior Court.

*C. Martindale*, for appellants.

*W. A. Ketcham*, Attorney-General, for State.

McCabe, J.—The appellants, as partners in the banking business under the firm name and style of Coffin & Stanton, sued the State of Indiana to recover damages for the breach of the following alleged contract, namely:

"Office of S. P. Sheerin & Co.,
"Brokers and Appraisers of Realty.

"Indianapolis, Ind., March 17, 1887.

" To the Governor, Treasurer and Auditor of State,
                    Indianapolis, Ind. :

"Gentlemen—We will take your proposed State loan of $330,000 to run five years, and to be redeemable at the pleasure of the State in two years, for which we will take the bonds of the State at par bearing three and three-tenths (3 3-10) per centum interest, payable semi-annually; principal and interest payable in New York.

              , Respectfully submitted,
                        "Coffin & Stanton,
                        "By S. P. Sheerin."

          "Indianapolis, Ind., March 17, 1887.

"The above proposition, $330,000, 3 3-10 *per centum,* is hereby accepted.

                    ."Isaac P. Gray, Governor,
                    "J. A. Lemcke, Treasurer of State,
                    "Bruce Carr, Auditor of State." .

The damages claimed as arising out of the alleged breach of the above contract and the breach thereof are alleged as follows:  "That in pursuance of said contract and acting upon said contract, the plaintiffs immediately resold said bonds in the State of New York, at a figure which would net these plaintiffs the sum of  *  *  *  $3,564.00; that, thereafter, the said State officers  *  *  *  did, on the 21st day of March,

1887, notify the said plaintiffs that they would not perform the contract   *   *   *;   that the State of Indiana has failed to perform its contract   *   * as aforesaid   *   *   and still fails and refuses to perform the same though plaintiffs have stood ready and have offered to perform their part of said contract."

The superior court overruled a demurrer to the complaint, and the issues formed thereon were tried by the court, resulting in a general finding for the defendant, upon which judgment was rendered over the plaintiffs' motion for a new trial.   The action of the court in overruling the later motion is the only error assigned; and the only ground or reason assigned in the motion for a new trial is that the decision is not sustained by and is contrary to the law and the evidence.   It is not claimed that the evidence makes any better case than the complaint.

The natural presumption arising from the facts stated in the complaint, aside from the special circumstances of the alleged resale of the bonds by the plaintiffs before they got them at a profit of $3,564.00, was that the bonds were worth the money which was to be paid for them, and the money was worth the bonds. Where the goods are contracted for, as was the case here, to be paid for on delivery, the measure of damages for non-delivery is the difference between the market value of the goods and the contract price at the time fixed for delivery. *Frink* v. *Tatman*, 36 Ind. 259; *Beard* v. *Sloan*, 38 Ind. 128; *Vickery* v. *McCormick*, 117 Ind. 594.   Therefore, if between the date of the contract and the time fixed for delivery or the breach of the contract there was no change in the market value of the bonds, the defendant could be held liable only for nominal damages.   *Rosenbaum* v. *McThomas*, 34 Ind. 331.

There is no allegation in the complaint, and it is not

claimed, that there is any showing in the evidence that there had been any increase in the market value of the bonds between the date of the contract, March 17, and the date of its breach, the 21st day of the same month. Therefore, for aught that is shown outside of the alleged special resale of the bonds by them, the plaintiffs' money in their pocket is worth as much as the bonds, and therefore they are not damaged by the failure to get it exchanged for something of no more value than their money, which they still retain.

It remains to be determined whether the proof of the allegation that the plaintiffs, acting upon said contract, immediately resold said bonds in the State of New York at a net profit of $3,564.00, affords any ground for recovery of that or any other sum as damages for the breach of the alleged contract. The natural presumption would arise from the written instrument itself, that plaintiffs were buying the bonds for the profit to be derived from the semi-annual interest at the rate of 3 3-10 per centum thereon. Under such circumstances both parties to the contract would have full notice that the market value of the bonds would be the measure of damages.

There is no allegation in the complaint that the defendant or her agents had any notice or knowledge of the contemplated resale of the bonds by the plaintiffs. The rule in such cases is stated in 5 Am. and Eng. Ency. of Law, 13-14, thus:    ''The liability for a breach of contract is less extensive than that for a tort; involving only such consequences as were the direct result of the breach, and were within the contemplation of the parties at the time of the formation of the contract.

''(a)    *Hadley* v. *Baxendale*, the leading English case on this subject, and one followed by the American

courts, has been considered to lay down the following rules as to damages for the breach of contract: 'First, that damages which may fairly and reasonably be considered as naturally arising from a breach of contract, according to the usual course of things, are always recoverable.' Among such are losses caused by the loss of a season, the fall of the market, any increased expense caused the plaintiff by the breach, or substantial inconvenience from that cause. * *

"Damages arising out of the usual course, but from peculiar circumstances, are too remote, unless the special circumstances were known to the defendant at the time of the breach."

Parties to the contract are not supposed to know more of one another's affairs than may be communicated to them, nor to consider existing or contemplated transactions with other persons unless these are made known to them. Hence the losses on collateral engagements depending on the fulfillment of the principal contract are too remote to be considered in estimating the damages for the breach of the principal contract. *Lawrence* v. *Wardwell*, 6 Barb. (N. Y.) 423; *Harper* v. *Miller*, 27 Ind. 277; 5 Am. and Eng. Ency. of Law, 15, and authorities cited in note. To the same effect is Sedgwick on Damages (6th ed.), page 79, and authorities there cited. *Vickery* v. *McCormick, supra,* in effect, holds the same thing. It follows from what we have said that the most the appellants were entitled to recover was mere nominal damages.

The failure to assess nominal damages is not an error that affects the substantial rights of appellants. *Patton* v. *Hamilton*, 12 Ind. 256; *Hacker* v. *Blake*, 17 Ind. 97; *Black* v. *Coan*, 48 Ind. 385; *Mahoney* v. *Robbins*, 49 Ind. 146; *Wimberg* v. *Schwegeman*, 97 Ind. 528.

The superior court, therefore, did not err in overruling appellants' motion for a new trial.

Judgment affirmed.

Filed April 17, 1896.